UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16mc23247-CMA

FILED by [signature] D.C.
JUL 28 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

In Re: Request from Peru Pursuant to the Inter-American Convention on Mutual Legal Assistance in Criminal Matters in the Matter of Gustavo Antonio Rivera Guzman and Jose Ricardo Maza Leon
_______________________________________/

**APPLICATION FOR ORDER PURSUANT TO THE INTER-AMERICAN CONVENTION ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS AND TITLE 18, UNITED STATES CODE, SECTION 3512**

The United States of America petitions this Court for an order, pursuant to Article 7(h) of the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted at the twenty-second regular session of the Organization of American States (OAS) General Assembly meeting in Nassau, Bahamas on May 23, 1992 and the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted June 11, 1993; both signed on behalf of the United States at OAS headquarters in Washington on January 10, 1995 (the "Convention"), 18 U.S.C. § 3512, and the Court's inherent authority, appointing Assistant United States Attorney Kevin J. Larsen or a substitute or successor subsequently designated by the Office of the United States Attorney as Commissioner, to collect evidence from witnesses and to take such other action as is necessary to execute the above captioned and attached request from Peru made pursuant to the Convention.

In support of this Application, the United States is submitting the accompanying Memorandum of Law.

The United States respectfully requests that the Court grant this Application. A proposed order is being submitted for the Court's consideration.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: ______________________________

Kevin J. Larsen
Assistant United States Attorney
Court No. A5501050
99 N.E. 4th Street, 4th Floor
Miami, FL 33132
Tel: (305) 961-9356
Fax: (305) 536-4699
Kevin.Larsen@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. ________________________

In Re: Request from Peru Pursuant to the Inter-American Convention on Mutual Legal Assistance in Criminal Matters in the Matter of Gustavo Antonio Rivera Guzman and Jose Ricardo Maza Leon
_______________________________________/

**ORDER APPOINTING COMMISSIONER**

Upon application of the United States, and upon review of the Request from Peru dated July 8, 2016 seeking evidence under the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted at the twenty-second regular session of the Organization of American States (OAS) General Assembly meeting in Nassau, Bahamas on May 23, 1992 and the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted June 11, 1993; both signed on behalf of the United States at OAS headquarters in Washington on January 10, 1995, for use in a criminal investigation, prosecution, or procedure related to the prosecution in Paraguay, and the Court having fully considered this matter,

**IT IS HEREBY ORDERED**, pursuant to the authority conferred by the Convention and 18 U.S.C. § 3512, as well as this Court's inherent authority, that Assistant United States Attorney Kevin J. Larsen or a substitute or successor designated by the Office of the United States Attorney is appointed as Commissioner (the "Commissioner") of this Court and hereby directed to execute the Request and to take such steps as are necessary to collect the evidence requested. In doing so, the Commissioner:

1. may issue commissioner's subpoenas to be served at any place within the United

States on persons (natural and legal) ordering them or their representatives to appear and to testify and produce evidence located within the United States;

2. shall provide notice with respect to the collection of evidence to those persons identified in the Request as parties to whom notice should be given (and no notice to any other party shall be required);

3. shall adopt procedures to collect the evidence requested consistent with its use in the investigation, prosecution or other proceeding for which Peru, has requested assistance, which procedures may be specified in the Request or provided by or with the approval of the Public Ministry, Republic of Peru;

4. may, in collecting the evidence requested, be accompanied by persons whose presence or participation is authorized by the Commissioner, including, without limitation, law enforcement agents/officers, and/or representatives of Peru who, as authorized or directed by the Commissioner, may direct questions to any witness;

5. may seek such further orders of this Court as may be necessary to execute this Request, including orders to show cause why persons served with commissioner's subpoenas who fail to produce evidence should not be held in contempt, and including protective orders to regulate the use of the evidence collected;

6. shall certify and submit the evidence collected to the Office of International Affairs, Criminal Division, U.S. Department of Justice, or as otherwise directed by that Office for transmission to Peru; and,

7. may provide copies of the evidence collected to persons identified in the Request as parties to whom such copies should be given (and to no other persons).

**IT IS FURTHER ORDERED** that any person from whom the Commissioner seeks to collect evidence may, for good cause shown, oppose the giving of evidence, or the circumstances thereof, by motion timely filed with this Court, a copy of which shall be provided contemporaneously to the Commissioner.

**DONE AND ORDERED**, in chambers at Miami, Florida, this ___day of________, 2016.

______________________________________
UNITED STATES DISTRICT JUDGE

cc: Kevin J. Larsen, AUSA
Garrison Carithers, Paralegal Specialist, USAO

United States Code Effective: October 19, 2009
Title 18. Crimes and Criminal Procedure
Part II. Criminal Procedure
Chapter 223. Witnesses and Evidence
§ 3512. Foreign requests for assistance in criminal investigations and prosecutions

(a) Execution of request for assistance.--

(1) In general.--Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

(2) Scope of orders.--Any order issued by a Federal judge pursuant to paragraph (1) may include the issuance of--

(A) a search warrant, as provided under Rule 41 of the Federal Rules of Criminal Procedure;

(B) a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703 of this title;

(C) an order for a pen register or trap and trace device as provided under section 3123 of this title; or

(D) an order requiring the appearance of a person for the purpose of providing testimony or a statement, or requiring the production of documents or other things, or both.

(b) Appointment of persons to take testimony or statements.--

(1) In general.--In response to an application for execution of a request from a foreign authority as described under subsection (a), a Federal judge may also issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or both.

(2) Authority of appointed person.--Any person appointed under an order issued pursuant to paragraph (1) may--

(A) issue orders requiring the appearance of a person, or the production of documents or other things, or both;

(B) administer any necessary oath; and

(C) take testimony or statements and receive documents or other things.

(c) Filing of requests.--Except as provided under subsection (d), an application for execution of a request from a foreign authority under this section may be filed--

(1) in the district in which a person who may be required to appear resides or is located or in which the documents or things to be produced are located;

(2) in cases in which the request seeks the appearance of persons or production of documents or things that may be located in multiple districts, in any one of the districts in which such a person, documents, or things may be located; or

(3) in any case, the district in which a related Federal criminal investigation or prosecution is being conducted, or in the District of Columbia.

(d) Search warrant limitation.--An application for execution of a request for a search warrant from a foreign authority under this section, other than an application for a warrant issued as provided under section 2703 of this title, shall be filed in the district in which the place or person to be searched is located.

(e) Search warrant standard.--A Federal judge may issue a search warrant under this section only if the foreign offense for which the evidence is sought involves conduct that, if committed in the United States, would be considered an offense punishable by imprisonment for more than one year under Federal or State law.

(f) Service of order or warrant.--Except as provided under subsection (d), an order or warrant issued pursuant to this section may be served or executed in any place in the United States.

(g) Rule of construction.--Nothing in this section shall be construed to preclude any foreign authority or an interested person from obtaining assistance in a criminal investigation or prosecution pursuant to section 1782 of title 28, United States Code.

(h) Definitions.--As used in this section, the following definitions shall apply:

(1) Federal judge.--The terms "Federal judge" and "Attorney for the Government" have the meaning given such terms for the purposes of the Federal Rules of Criminal Procedure.

(2) Foreign authority.--The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

(Added Pub.L. 111-79, § 2(4), Oct. 19, 2009, 123 Stat. 2087.)
18 U.S.C.A. § 3512, 18 USCA § 3512
Current through P.L. 111-86 (excluding P.L. 111-84) approved 10-29-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. ______________________

In Re: Request from Peru Pursuant to the
Inter-American Convention on Mutual Legal
Assistance in Criminal Matters in the Matter of
Gustavo Antonio Rivera Guzman and
Jose Ricardo Maza Leon
_____________________________________/

**SAMPLE**

**COMMISSIONER'S SUBPOENA**

TO: ___________________________

___________________________

I, Commissioner Kevin J. Larsen, an Assistant United States Attorney for the Southern District of Florida, acting pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted at the twenty-second regular session of the Organization of American States (OAS) General Assembly meeting in Nassau, Bahamas on May 23, 1992 and the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted June 11, 1993; both signed on behalf of the United States at OAS headquarters in Washington on January 10, 1995, 18 U.S.C. § 3512, and this Court's order thereunder dated ______________, for the purpose of rendering assistance to Peru, command that you appear before me in Room_____ , in the building located at __________________________ , in the city of ____________________ , in the state of ____________ , on ____________, 20__, at

_____ AM/PM to provide testimony/documents regarding an alleged violation of the laws of Peru, namely, money laundering, fraud, and among other violations, and that at the place and time aforesaid you provide the following:

**[identify documents etc. to be produced]**

Failure to attend and provide testimony/said documents, or for disclosure of the existence of the subpoena, you may be deemed guilty of contempt and liable to penalties under the law.

______________________________
Commissioner Kevin J. Larsen

Dated: _______

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO



105TH CONGRESS
*1st Session*

SENATE

TREATY DOC.
105–25

# INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS WITH RELATED OPTIONAL PROTOCOL

## MESSAGE

FROM

## THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS, ADOPTED AT THE TWENTY-SECOND REGULAR SESSION OF THE ORGANIZATION OF AMERICAN STATES (OAS) GENERAL ASSEMBLY MEETING IN NASSAU, THE BAHAMAS, ON MAY 23, 1992, AND THE OPTIONAL PROTOCOL RELATED TO THE INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS, ADOPTED AT THE TWENTY-THIRD REGULAR SESSION OF THE OAS GENERAL ASSEMBLY MEETING IN MANAGUA, NICARAGUA, ON JUNE 11, 1993. BOTH INSTRUMENTS SIGNED ON BEHALF OF THE UNITED STATES AT OAS HEADQUARTERS IN WASHINGTON ON JANUARY 10, 1995

SEPTEMBER 3, 1997.—Treaty was read the first time and, together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE
39–118 WASHINGTON : 1997

## LETTER OF TRANSMITTAL

---

THE WHITE HOUSE, *September 3, 1997.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Convention"), adopted at the twenty-second regular session of the Organization of American States (OAS) General Assembly meeting in Nassau, The Bahamas, on May 23, 1992, and the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Protocol"), adopted at the twenty-third regular session of the OAS General Assembly meeting in Managua, Nicaragua, on June 11, 1993. Both of these instruments were signed on behalf of the United States at the OAS headquarters in Washington on January 10, 1995. In addition, for the information of the Senate, I transmit the report of the Department of State with respect to the Convention and the Protocol.

When ratified, the Convention and the Protocol will constitute the first multilateral convention between the United States and other members of the OAS in the field of international judicial cooperation in criminal matters. The provisions of the Convention and Protocol are explained in the report of the Department of State that accompanies this message.

The Convention and Protocol will establish a treaty-based system of judicial assistance in criminal matters analogous to that which exists bilaterally between the United States and a number of countries. These instruments should prove to be effective tools to assist in the prosecution of a wide variety of modern criminals, including members of drug cartels, "white-collar" criminals, and terrorists. The Convention and Protocol are self-executing, and will not require implementing legislation.

The Convention provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Convention includes: (1) taking testimony or statements of persons; (2) providing documents, records, and articles of evidence; (3) serving documents; (4) locating or identifying persons or items; (5) transferring persons in custody for testimony or other purposes; (6) executing requests for searches and seizures; (7) assisting in forfeiture proceedings; and (8) rendering any other form of assistance not prohibited by the laws of the Requested State.

The Protocol was negotiated and adopted at the insistence of the United States Government, and will permit a greater measure of cooperation in connection with tax offenses. I believe that the Convention should not be ratified by the United States without the

Protocol. If the Convention and Protocol are ratified, the instruments of ratification would be deposited simultaneously.

One significant advantage of this Convention and Protocol is that they provide uniform procedures and rules for cooperation in criminal matters by all the states that become Party. In addition, the Convention and Protocol would obviate the expenditure of resources that would be required for the United States to negotiate and bring into force bilateral mutual assistance treaties with certain OAS member states.

I recommend that the Senate give early and favorable consideration to the Convention and the Protocol, and that it give its advice and consent to ratification, subject to the understandings described in the accompanying report of the Department of State.

WILLIAM J. CLINTON.

# LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, June 18, 1997.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to transmittal to the Senate for its advice and consent to ratification, the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Convention"), and the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Protocol"). The Convention was adopted and opened for signature at the twenty-second regular session of the General Assembly meeting of the Organization of American States (OAS) in Nassau, The Bahamas in May 1992. The Protocol was adopted and opened for signature at the twenty-third regular session of the OAS General Assembly meeting in Managua, Nicaragua in June 1993. Both the Convention and the Protocol were signed by the United States on January 10, 1995 at the OAS headquarters in Washington. I recommend that both the Convention and Protocol be transmitted to the Senate for its advice and consent to ratification.

To date, ten states have signed the Convention (Brazil, Canada, Ecuador, Grenada, Nicaragua, Peru, Suriname, the United States, Uruguay and Venezuela). Three states (Venezuela, Peru, and Canada) have ratified, and the Convention entered into force on April 14, 1996. However, only three states (the United States, Brazil, and Ecuador) have signed the protocol, and none has ratified it. Thus, the Protocol is not yet in force.

The Convention and Protocol establish a treaty-based system of mutual assistance among the OAS member states in criminal matters, analogous to that which exists pursuant to bilateral mutual legal assistance treaties between the United States and a number of countries. This Convention contains many provisions similar to those in our bilateral treaties. It will enhance our ability to investigate and prosecute a variety of offenses, including violent crimes, drug trafficking, fraud and while-collar crimes. The Convention is designed to be self-executing and will not require implementing legislation.

The United States declined initially to sign the Convention because, among other reasons, it limited assistance in cases involving tax offenses. The United States therefore proposed the draft of the Protocol to the Convention for consideration at the twenty-third regular session of the OAS General Assembly, which met in Managua, Nicaragua in 1993. The text of the Protocol that was adopted

during that session is generally based on the draft that was proposed by the United States. The relevant U.S. Government agencies believe the Convention should not be ratified by the United States without the Protocol. If both are ratified, the instruments of ratification would be submitted simultaneously.

The Convention consists of forty articles. Chapter I (Articles 1–9) contains the Convention's general provisions. Article 1 states the purpose of the Convention, which is for the Parties to render to one another mutual assistance in criminal matters, in accordance with the provisions of the Convention.

Article 2 defines the scope and application of the Convention. Specifically, the Parties are obligated to render to one another mutual assistance in investigations, prosecutions, and proceedings that pertain to crimes over which the Requesting State has jurisdiction at the time the assistance is requested. In addition, this Article expressly states that the Convention does not authorize any Party to undertake, in the territory of another Party, the exercise of jurisdiction or the performance of functions that are placed within the exclusive purview of the authorities of that other Party by its domestic law. Finally, Article 2 stipulates that the Convention's provisions do not create any right on the part of any private person to obtain or exclude any evidence or to impede execution of any request for assistance.

Article 3 provides that each state will designate a central authority that shall be responsible for issuing and receiving requests for assistance. For the United States, the central authority would be the Attorney General, or such person or persons as the Attorney General may designate. The central authorities shall communicate directly with one another for purposes of implementation of the Convention.

Article 4 specifies that, in light of the diversity of legal systems of the Parties, assistance under the Convention shall be based on requests for cooperation that emanate from those authorities in the Requesting State that are responsible for criminal investigation or prosecution.

Article 5 states that assistance under the Convention shall generally not be subject to a "dual criminality" requirement; that is, assistance shall be rendered even if the act that gives rise to it is not punishable under the legislation of the Requested State. However, the Article authorizes the Requested State to refuse assistance on grounds of lack of dual criminality when the request pertains to either of two measures: (a) immobilization and sequestration of property; and (b) searches and seizures (including house searches). Although the United States generally prefers to avoid the inclusion of dual criminality requirements in its mutual legal assistance treaties, the above-cited exceptions in Article 5 will confer on the United States the discretion to decline to provide assistance in connection with certain measures that under U.S. law are subject to constitutional limitations, in cases where the criminal laws of the Requesting State proscribe conduct that is not punishable under United States law.

Article 6 provides that the act that gives rise to the request must be punishable by one year or more of imprisonment in the Requesting State.

Article 7 contains a non-exhaustive list of the major types of assistance to be provided under the Convention, including notification of rulings and judgments; taking of testimony or statements from persons; summoning of witnesses and expert witnesses to provide testimony; immobilization and sequestration of property, freezing of assets, and assistance in procedures related to seizures; searches or seizures; examinations of objects and places; service of judicial documents; transmittal of documents, reports, information, and evidence; and transfer of detained persons for the purposes of the Convention. The Article provides that any other procedure may also be covered by the Convention upon agreement between the Requesting State and the Requested State.

Article 8 states that the Convention shall not apply to crimes that are subject exclusively to military legislation.

Article 9 sets forth the grounds upon which the Requested State may refuse assistance. Specifically, the Requested State may decline assistance if it determines that the request is being used to prosecute a person on a charge with respect to which the person has already been sentenced or acquitted in a trail in the Requesting or Requested State. Assistance may also be refused if the investigation has been initiated for the purpose of prosecuting, punishing, or discriminating in any way against an individual or group of persons for reason of sex, race, social status, nationality, religion, or ideology. In addition, a request may be denied if it refers to a crime that is political or related to a political crime, or to a common crime prosecuted for political reasons. Article 9 also gives the Requested State the discretion to deny assistance if the request has been issued at the request of a special or ad hoc tribunal; or if public policy (order public), sovereignty, security or basic public interests would be prejudiced.

Article 9 provides, finally, that a request may be denied if it pertains to a tax crime. However, Article 9 stipulates that assistance in connection with tax crimes shall be granted if the offense is committed by way of an intentionally incorrect statement, whether oral or written, or by way of an intentional failure to declare income derived from any other offense covered by the Convention for the purpose of concealing such income. In addition, cooperation with respect to tax offenses is subject to the terms of the Protocol for those states that are Parties to that instrument.

Chapter II (Articles 10–16) describes procedures for the filing, processing and execution of requests for assistance. Article 10 provides that requests shall be made in writing and executed in accordance with the domestic law of the Requested State.

Article 11 permits the Requested State to postpone execution of any request if doing so is necessary to continue an investigation or proceeding in progress in the Requested State. In such cases, the Requested State must provide an explanation of its grounds for postponing execution of the request.

Article 12 stipulates that documents and objects delivered in compliance with a request for assistance shall be returned to the Requested State as soon as possible, unless the latter decides otherwise.

Article 13 provides that the Requested State shall execute requests for search, seizure, attachment, and surrender of any items,

documents, records, or effects, if the competent authority determines that the request contains information that justifies the proposed action. Such action is subject to the procedural and substantive law of the Requested State. Furthermore, the Article provides that the Requested State shall determine, according to its law, what requirements must be met to protect the interests held by third parties in the items that are to be transferred.

Article 14 authorizes the central authority of any Party to convey to its counterparts in other Parties information it has on the existence of proceeds, fruits, or instrumentalities of a crime in the territory of those Parties.

Article 15 requires the Parties to assist each other, to the extent permitted by their respective laws, in precautionary measures and measures for securing the proceeds, fruits, and instrumentalities of the crime.

Article 16 provides that the Requested State shall set the date and place for execution of the request for assistance and may so inform the Requesting State. The Article also authorizes officials and interested parties of the Requesting State or their representatives, after informing the central authority of the Requested State, to be present at and participate in the execution of the request for assistance, to the extent permissible under the law of the Requested State's authorities.

Chapter III (Articles 17–23) addresses the subjects of service of judicial decisions, judgments and verdicts, and the appearance of witnesses and expert witnesses. Article 17 provides that, at the request of the Requesting State, the Requested State shall serve notice of decisions, judgments, or other documents issued by the competent authorities of the Requesting State.

Article 18 directs that, at the request of the Requesting State, any person present in the Requested State may be summoned to appear before a competent authority, in accordance with the law of the Requested State, to give testimony or to provide documents, records, or evidence.

Article 19 states that, when the Requesting State requests that a person appear in its territory to give testimony or a report, the Requested State shall invite the witness or expert witness to appear voluntarily, without the use of threats or coercive measures, before the appropriate authority in the Requesting State.

Article 20 addresses the subject of transfers of persons subject to criminal proceedings. The Article authorizes temporary transfers to the Requesting State, for the purpose of assistance under the Convention, of persons subject to criminal proceedings in the Requested State, but only if the person and the Requested State consent. The article also authorizes transfers to the Requested State of persons subject to criminal proceedings in the Requesting State, but only if the person and both states consent.

The Article enunciates grounds for denial of a request for transfer, including instances in which the individual in custody refuses to consent to the transfer; when the person's presence is necessary in an investigation or criminal proceeding that is under way in the jurisdiction to which he is subject at the time; and when there are other considerations, whether legal or of another nature, as deter-

mined by the competent authority of the Requested or Requesting State.

Article 20 also stipulates that the receiving state shall have the obligation to keep the transferred person in physical custody; that it shall return the transferred person to the sending state as soon as possible or as agreed by the central authorities of the two states; and that the sending state shall not be required to initiate extradition proceedings for the return of the transferred person. In addition, the transferred person shall receive credit toward service of the sentence imposed in the sending state for time served in the receiving state; and the length of time spent by the person in the receiving state shall not exceed the period remaining for service of the sentence or 60 days, whichever is less, unless the person and both states agree to an extension of time.

Article 21 obligates the Parties to render cooperation, to the extent possible, for travel through their territory of the persons mentioned in Article 20, provided that the central authorities of the transit state are given due advance notice and that such persons travel in the custody of agents of the Requesting State (except where air transportation is used and no landing is scheduled in the territory of the Party to be overflown).

Article 22 requires, upon request of the person being transferred from the sending state, that the receiving state grant safe-conduct to the person. This means that the person shall not be detained or prosecuted for offenses committed prior to the transfer; be required to make a statement or give testimony in proceedings not specified in the request; or be detained or prosecuted on the basis of any statement he makes, except in case of contempt of court or perjury.

Article 23 provides that, in connection with witnesses or expert witnesses, documents containing the relevant questions, interrogatories, or questionnaires shall be forwarded to the extent possible or necessary.

Chapter IV (Articles 24–25) addresses the issue of transmittal of information and records. Article 24 provides that, upon request, the Requested State shall make available to the Requesting State a copy of the public documents, records, or information held by the government agencies or departments of the Requested State. In addition, the Requested State may make available such government information and records that are not public, but only to the same extent as it would make such available to its own judicial authorities or to others responsible for application of the law.

Article 25 prohibits the Requesting State from disclosing or using any information or evidence obtained in the course of application of the Convention for purposes other than those specified in the request for assistance, unless consent is obtained from the central authority of the Requested State. To ensure that the Convention is implemented consistent with existing U.S. legislation, I recommend that the following understanding to Article 25 be included in the United States instrument of ratification:

> The United States understands that Article 25 of the Convention, which limits disclosure or use of information or evidence obtained under the Convention, shall no longer apply if such information or evidence is made public, in a

manner consistent with Article 25, in the course of proceedings in the Requesting State.

Article 25 further provides that, when necessary, the Requested State may ask that the information or evidence provided remain confidential according to conditions specified by the central authority.

Chapter V (Articles 26–31) sets forth the procedures that govern the presentation and processing of requests. Article 26 specifies the information that requests for assistance must contain, including a statement of the crime to which the procedure refers; a summary of the relevant facts; the nature of the proceeding giving rise to the request for assistance; a precise description of the assistance requested and any information necessary for the fulfillment of such request; and, where pertinent, a description of any proceeding or other special requirement of the Requesting State.

Article 26 also provides that when the Requested State is unable to comply with a request, it must return the request to the Requesting State with an explanation of the reasons therefor. The Requested State may request additional information when necessary for fulfillment of the request under its domestic law or to facilitate such fulfillment.

Article 27 eliminates any requirement for certification or authentication of documents, so long as the documents are processed through the central authorities in accordance with the Convention.

Article 28 requires that requests for assistance and their accompanying documentation be translated into an official language of the Requested State.

Article 29 renders the Requested State responsible for all regular costs of executing a request in its territory, except for fees for expert witnesses, travel costs, and other expenses related to the transportation of persons from the territory of the state to that of the other, which shall be borne by the Requesting State.

Article 30 permits the Parties to exchange information on matters related to the application of the Convention, for the purpose of furthering the treaty's implementation.

Article 31 directs that the domestic law of each Party shall govern liability for damages arising from the acts of its authorities in the execution of the Convention. The Article also exempts the Parties from liability for damages that may arise from the acts committed by the authorities of another Party in the formulation or execution of a request under the Convention.

Chapter VI (Articles 32–40) sets forth the final clauses. Article 32 provides that the Convention shall be open for signature by the member states of the Organization of American States.

Article 33 renders the Convention subject to ratification, and requires that instruments of ratification be deposited with the General Secretariat of the Organization of American States.

Article 34 opens the Convention to accession by any other state, and requires that instruments of accession be deposited with the OAS General Secretariat.

Article 35 permits each state to make reservations to the Convention at the time of signature, approval, ratification, or accession, provided that each reservation concerns at least one specific provi-

sion and is not incompatible with the object and purpose of the Convention.

Article 36 provides that the Convention shall not be interpreted as affecting or restricting obligations in effect under any other bilateral or multilateral convention, or provisions therein, relating to international criminal judicial assistance, or more favorable practices that those states may observe in the matter. The United States wishes to ensure that more favorable provisions in bilateral treaties not be prejudiced by the OAS MLAT, and that accession to this Convention not be interpreted as indicative of the United States Government's willingness to include identical provisions in future bilateral treaties. For these reasons, the United States made a statement at the OAS General Assembly in Nassau, The Bahamas, in 1992, emphasizing the provisions of this Article. In order to stress this point formally, I recommend that the following understanding be included in the United States instrument of ratification of both the Convention and the Protocol:

> The United States understands that the Convention and Optional Protocol are not intended to replace, supersede, obviate or otherwise interfere with any other bilateral or multilateral treaties or conventions, including those that relate to mutual assistance in criminal matters.

Article 37 states that the Convention shall enter into force on the thirtieth day following the date of deposit of the second instrument of ratification. For each state that ratifies or accedes to the Convention after the deposit of the second instrument of ratification, the Convention shall enter into force on the thirtieth day after deposit by such state of its instrument of ratification or accession.

Article 38 provides that if a Party has two or more territorial units in which different systems of law govern matters addressed in the Convention, it shall state at the time of signature, ratification, or accession whether the Convention shall apply to all of its territorial units or only to one or more of them.

Article 39 sets forth the termination clause of the Convention. It states that the Convention shall remain in force indefinitely, but that any Party may denounce or terminate it. The instrument of denunciation must be deposited with the OAS General Secretariat. The Convention shall cease to be in force for the denouncing state one year from the date of deposit of the instrument of denunciation.

Article 40 provides that the English, French, Spanish and Portuguese texts of the Convention are equally authentic, and that the original instruments in each of those languages shall be deposited with the OAS General Secretariat, which shall forward authenticated copies of the text of the United Nations General Secretariat for registration and publication. Finally, this Article indicates that the OAS General Secretariat shall notify the OAS member states, as well as those states that have acceded to the Convention, of the signatures and deposits of instruments of ratification, accession, and denunciation, and of reservations, if any, as well as the statements specified in Article 38 of the Convention.

The Protocol consists of five Articles. The first Article provides that Parties to the Protocol shall not exercise the right con-

templated in Article 9.f of the Convention to refuse a request for assistance from another Party to the Protocol solely on the ground that the request concerns a tax crime.

Article 2 provides that, when acting as a Requested State under the Convention, Parties to the Protocol shall not decline assistance that requires the measures referred to in Article 5 of the Convention, if the act specified in the request corresponds to a tax crime of the same nature under the laws of the Requested State.

Articles 3, 4, and 5 contain the final clauses. Article 3 articulates which states can become Parties or accede to the Convention, and imposes requirements regarding the deposit of instruments of ratification or accession. This Article also specifies conditions for the filing of reservations, and includes a paragraph stating that the Protocol shall not be interpreted as affecting or restricting obligations under other treaties or practices with respect to international criminal assistance. As mentioned above in connection with Article 36 of the Convention, I recommend that the following understanding be included in the United States instrument of ratification of both the Convention and the Protocol:

> The United States understands that the Convention and Optional Protocol are not intended to replace, supersede, obviate or otherwise interfere with any other bilateral or multilateral treaties or conventions, including those that relate to mutual assistance in criminal matters.

Finally, Article 3 sets forth provisions regarding entry into force of the Protocol, and requiring statements by countries with two or more territorial units on the application of the Protocol to such units.

Article 4 provides that the Protocol shall remain in force as long as the Convention does, but that any of the Parties may denounce it. The instrument of denunciation must be deposited with the OAS General Secretariat, and the Protocol would cease to be in effect for the denouncing state one year from the date of such deposit.

Article 5 requires that the original text of the Protocol in the four OAS languages be deposited with the OAS General Secretariat, and that the latter forward authenticated copies of the text to the United Nations Secretariat for registration. Finally, Article 5 directs the OAS General Secretariat to notify the OAS member states and acceding states of the signatures and deposits of instruments of ratification, accession, and denunciation, as well as reservations, if any, and the statements specified in Article 3.

It is my belief that this Convention and the Protocol would afford substantial benefits to the United States, and would be fully consistent with existing United States legislation.

A Technical Analysis explaining in detail the provisions of the Convention and the Protocol was prepared by the United States negotiating delegation and will be transmitted separately to the Senate Committee on Foreign Relations.

The Departments of Justice and Treasury join the Department of State in recommending that the Convention and the Protocol be transmitted to the Senate at an early date for its advice and consent to ratification, subject to the understandings described above.

Respectfully submitted,

MADELEINE ALBRIGHT.

CONVENCION INTERAMERICANA SOBRE
ASISTENCIA MUTUA EN MATERIA PENAL
Adoptada en Nassau, Bahamas,
el 23 de mayo de 1992,
en el Vigésimo Segundo Período Ordinario
de Sesiones de la Asamblea General

INTER-AMERICAN CONVENTION ON MUTUAL
ASSISTANCE IN CRIMINAL MATTERS
Adopted at Nassau, Bahamas,
on May 23, 1992,
at the Second Regular Session of
the General Assembly

CONVENÇÃO INTERAMERICANA SOBRE ASSISTÊNCIA
MÚTUA EM MATÉRIA PENAL
Adotado em Nassau, Bahamas, em
23 de maio de 1992,
no Vigésimo Segundo Período Ordinário de
Sessões da Assembléia Geral

CONVENTION INTERAMERICAINE SUR L'ENTRAIDE
EN MATIERE PENALE
Adopté à Nassau, Bahamas, le
23 de mai de 1992,
lors de la vingt deuxième
Session Ordinaire de l'Assemblée Générale

# INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

## INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

### PREAMBLE

WHEREAS:

The Charter of the Organization of American States, in Article 2.e, establishes that an essential objective of the American states is "to seek the solution of political, juridical, and economic problems that may arise among them"; and

The adoption of common rules in the field of mutual assistance in criminal matters will contribute to the attainment of this goal,

THE MEMBER STATES OF THE ORGANIZATION OF AMERICAN STATES

Do hereby adopt the following Inter-American Convention on Mutual Assistance in Criminal Matters:

### CHAPTER I

### GENERAL PROVISIONS

<u>Article 1</u>. PURPOSE OF THE CONVENTION

The states parties undertake to render to one another mutual assistance in criminal matters, in accordance with the provisions of this convention.

<u>Article 2</u>. SCOPE AND APPLICATION OF THE CONVENTION

The states parties shall render to one another mutual assistance in investigations, prosecutions, and proceedings that pertain to crimes over which the requesting state has jurisdiction at the time the assistance is requested.

This convention does not authorize any state party to undertake, in the territory of another state party, the exercise of jurisdiction or the performance of functions that are placed within the exclusive purview of the authorities of that other party by its domestic law.

This convention applies solely to the provision of mutual assistance among states parties. Its provisions shall not create any right on the part of any private person to obtain or exclude any evidence or to impede execution of any request for assistance.

<u>Article 3</u>. CENTRAL AUTHORITY

Each state shall designate a central authority at the time of signature or ratification of this convention or accession hereto.

The central authorities shall be responsible for issuing and receiving requests for assistance.

The central authorities shall communicate directly with one another for all purposes of this convention.

Article 4

In view of the diversity of the legal systems of the states parties, the assistance to which this convention refers shall be based upon requests for cooperation from the authorities responsible for criminal investigation or prosecution in the requesting state.

Article 5. DOUBLE CRIMINALITY

The assistance shall be rendered even if the act that gives rise to it is not punishable under the legislation of the requested state.

When the request for assistance pertains to the following measures: (a) immobilization and sequestration of property and (b) searches and seizures, including house searches, the requested state may decline to render the assistance if the act that gives rise to the request is not punishable under its legislation.

Article 6

For the purposes of this convention, the act that gives rise to the request must be punishable by one year or more of imprisonment in the requesting state.

Article 7. SCOPE OF APPLICATION

The assistance envisaged under this convention shall include the following procedures, among others:

a. notification of rulings and judgments;

b. taking of testimony or statements from persons;

c. summoning of witnesses and expert witnesses to provide testimony;

d. immobilization and sequestration of property, freezing of assets, and assistance in procedures related to seizures;

e. searches or seizures;

f. examination of objects and places;

g. service of judicial documents;

h. transmittal of documents, reports, information, and evidence;

i. transfer of detained persons for the purpose of this convention; and

j. any other procedure provided there is agreement between the requesting state and the requested state.

Article 8. MILITARY CRIMES

This convention shall not apply to crimes that are subject exclusively to military legislation.

Article 9. REFUSAL OF ASSISTANCE

The requested state may refuse assistance when it determines that:

a. The request for assistance is being used in order to prosecute a person on a charge with respect to which that person has already been sentenced or acquitted in a trial in the requesting or requested state;

b. The investigation has been initiated for the purpose of prosecuting, punishing, or discriminating in any way against an individual or group of persons for reason of sex, race, social status, nationality, religion, or ideology;

c. The request refers to a crime that is political or related to a political crime, or to a common crime prosecuted for political reasons;

d. The request has been issued at the request of a special or ad hoc tribunal;

e. Public policy (ordre public), sovereignty, security, or basic public interests are prejudiced; and

f. The request pertains to a tax crime. Nevertheless, the assistance shall be granted if the offense is committed by way of an intentionally incorrect statement, whether oral or written, or by way of an intentional failure to declare income derived from any other offense covered by this convention for the purpose of concealing such income.

CHAPTER II

REQUESTS FOR ASSISTANCE, PROCESSING AND EXECUTION

Article 10. REQUESTS FOR ASSISTANCE

Requests for assistance issued by the requesting state shall be made in writing and shall be executed in accordance with the domestic law of the requested state.

The procedures specified in the request for assistance shall be fulfilled in the manner indicated by the requesting state insofar as the law of the requested state is not violated.

Article 11

The requested state may postpone the execution of any request that has been made to it, with an explanation of its grounds for doing so, if it is necessary to continue an investigation or proceeding in progress in the requested state.

Article 12

Documents and objects delivered in compliance with a request for assistance shall be returned to the requested state as soon as possible, unless the latter decides otherwise.

Article 13. SEARCH, SEIZURE, ATTACHMENT, AND SURRENDER OF PROPERTY

The requested state shall execute requests for search, seizure, attachment, and surrender of any items, documents, records, or effects, if the competent authority determines that the request contains information that justifies the proposed action. That action shall be subject to the procedural and substantive law of the requested state.

In accordance with the provisions of this convention, the requested state shall determine, according to its law, what requirements must be met to protect the interests held by third parties in the items that are to be transferred.

Article 14. MEASURES FOR SECURING ASSETS

The central authority of any party may convey to the central authority of any other party information it has on the existence of proceeds, fruits, or instrumentalities of a crime in the territory of that other party.

Article 15

The parties shall assist each other, to the extent permitted by their respective laws, in precautionary measures and measures for securing the proceeds, fruits, and instrumentalities of the crime.

Article 16. DATE, PLACE AND MODALITY OF THE EXECUTION OF THE REQUEST FOR ASSISTANCE

The requested state shall set the date and place for execution of the request for assistance and may so inform the requesting state.

Officials and interested parties of the requesting state or their representatives may, after informing the central

authority of the requested state, be present at and participate in the execution of the request for assistance, to the extent not prohibited by the law of the requested state, and provided that the authorities of the requested state have given their express consent thereto.

## CHAPTER III

## SERVICE OF JUDICIAL DECISIONS, JUDGMENTS, AND VERDICTS, AND APPEARANCE OF WITNESSES AND EXPERT WITNESSES

Article 17

At the request of the requesting state, the requested state shall serve notice of decisions, judgments, or other documents issued by the competent authorities of the requesting state.

Article 18. TESTIMONY IN THE REQUESTED STATE

At the request of the requesting state, any person present in the requested state shall be summoned to appear before a competent authority, in accordance with the law of the requested state, to give testimony or to provide documents, records, or evidence.

Article 19. TESTIMONY IN THE REQUESTING STATE

When the requesting state requests that a person appear in its territory to give testimony or a report, the requested state shall invite the witness or expert witness to appear voluntarily, without the use of threats or coercive measures, before the appropriate authority in the requesting state. If deemed necessary, the central authority of the requested state may make a written record of the individual's willingness to appear in the requesting state. The central authority of the requested state shall promptly inform the central authority of the requesting state of the response of the person.

Article 20. TRANSFER OF PERSONS SUBJECT TO CRIMINAL PROCEEDINGS

A person subject to criminal proceedings in the requested state whose presence in the requesting state is needed for purposes of assistance under this convention shall be transferred temporarily to the requesting state for that purpose if the person and the requested state consent to the transfer.

A person subject to criminal proceedings in the requesting state whose presence in the requested state is needed for purposes of assistance under this convention shall be transferred temporarily to the requested state if the person consents and both states agree.

The actions set forth above may be denied for the following reasons, among others:

a. the individual in custody or serving a sentence refuses to consent to the transfer;

b. as long as his presence is necessary in an investigation or criminal proceeding that is under way in the jurisdiction to which he is subject at the time;

c. there are other considerations, whether legal or of another nature, as determined by the competent authority of the requested or requesting state.

For purposes of this article:

a. the receiving state shall have the authority and the obligation to keep the transferred person in physical custody unless otherwise indicated by the sending state;

b. the receiving state shall return the transferred person to the sending state as soon as circumstances permit or as otherwise agreed by the central authorities of the two states;

c. the sending state shall not be required to initiate extradition proceedings for the return of the transferred person;

d. the transferred person shall receive credit toward service of the sentence imposed in the sending state for time served in the receiving state; and

e. the length of time spent by the person in the receiving state shall never exceed the period remaining for service of the sentence or 60 days, whichever is less, unless the person and both states agree to an extension of time.

<u>Article 21</u>. TRANSIT

The states parties shall render cooperation, to the extent possible, for travel through their territory of the persons mentioned in the preceding article, provided that the respective central authority has been given due advance notice and that such persons travel in the custody of agents of the requesting state.

Such prior notice shall not be necessary when air transportation is used and no regular landing is scheduled in the territory of the state party or states parties to be overflown.

Article 22. SAFE-CONDUCT

The appearance or transfer of the person who agrees to render a statement or to testify under the provisions of this convention shall require, if the person or the sending state so requests prior to such appearance or transfer, that the receiving state grant safe-conduct under which the person, while in the receiving state, shall not:

a. be detained or prosecuted for offenses committed prior to his departure from the territory of the sending state;

b. be required to make a statement or to give testimony in proceedings not specified in the request; or

c. be detained or prosecuted on the basis of any statement he makes, except in case of contempt of court or perjury.

The safe-conduct specified in the preceding paragraph shall cease when the person voluntarily prolongs his stay in the territory of the receiving state for more than 10 days after his presence is no longer necessary in that state, as communicated to the sending state.

Article 23

In connection with witnesses or expert witnesses, documents containing the relevant questions, interrogatories, or questionnaires shall be forwarded to the extent possible or necessary.

## CHAPTER IV

## TRANSMITTAL OF INFORMATION AND RECORDS

Article 24

In cases where assistance is carried out under this convention, the requested state, upon request and in accordance with its domestic procedure, shall make available to the requesting state a copy of the public documents, records, or information held by the government agencies or departments of the requested state.

The requested state may make available copies of any document, record, or other information held by a government agency or department of that state that is not public in nature, to the same extent as and subject to the same conditions under which they would be made available to its own judicial authorities or to others responsible for application of the law. The requested state, at its own discretion, may deny, in whole or in part, any request made under the provisions of this paragraph.

Article 25. LIMITATION ON THE USE OF INFORMATION OR EVIDENCE

The requesting state may not disclose or use any information or evidence obtained in the course of application of this convention for purposes other than those specified in the request for assistance without prior consent from the central authority of the requested state.

In exceptional cases, if the requesting state needs to disclose and use, in whole or in part, the information or evidence for purposes other than those specified, it shall request authorization therefor from the requested state, which, at its discretion, may accede to or deny that request, in whole or in part.

The information or evidence that must be disclosed and used to the extent necessary for proper fulfillment of the procedure or formalities specified in the request shall not be subject to the authorization requirement set forth in this article.

When necessary, the requested state may ask that the information or evidence provided remain confidential according to conditions specified by the central authority. If the requesting party is unable to accede to such request, the central authorities shall confer in order to define mutually acceptable terms of confidentiality.

CHAPTER V

PROCEDURE

Article 26

Requests for assistance shall contain the following details:

a. the crime to which the procedure refers; a summary description of the essential facts of the crime, investigation, or criminal proceeding in question; and a description of the facts to which the request refers;

b. proceeding giving rise to the request for assistance, with a precise description of such proceeding;

c. where pertinent, a description of any proceeding or other special requirement of the requesting state;

d. a precise description of the assistance requested and any information necessary for the fulfillment of that request.

When the requested state is unable to comply with a request for assistance, it shall return the request to the requesting state with an explanation of the reason therefor.

The requested state may request additional information when necessary for fulfillment of the request under its domestic law or to facilitate such fulfillment.

When necessary, the requesting state shall proceed in accordance with the provisions of the last paragraph of Article 24 of this convention.

Article 27

Documents processed through the central authorities in accordance with this convention shall be exempt from certification or authentication.

Article 28

Requests for assistance and the accompanying documentation must be translated into an official language of the requested state.

Article 29

The requested state shall be responsible for all regular costs of executing a request in its territory, except for those listed below, which shall be borne by the requesting state:

a. fees for expert witnesses; and

b. travel costs and other expenses related to the transportation of persons from the territory of one state to that of the other.

If it appears that the processing of the request might entail unusual costs, the states parties shall confer to determine the terms and conditions under which the assistance could be rendered.

Article 30

To the extent that they find it useful and necessary for furthering the implementation of this convention, the states parties may exchange information on matters related to its application.

Article 31

The domestic law of each party shall govern liability for damages arising from the acts of its authorities in the execution of this Convention.

Neither party shall be liable for damages that may arise from the acts committed by the authorities of the other

party in the formulation or execution of a request under this Convention.

CHAPTER VI

FINAL CLAUSES

Article 32

This convention shall be open for signature by the member states of the Organization of American States.

Article 33

This convention is subject to ratification. The instruments of ratification shall be deposited with the General Secretariat of the Organization of American States.

Article 34

This convention shall remain open for accession by any other state. The instruments of accession shall be deposited with the General Secretariat of the Organization of American States.

Article 35

Each state may make reservations to this convention at the time of signature, approval, ratification, or accession, provided that each reservation concerns at least one specific provision and is not incompatible with the object and purpose of the convention.

Article 36

This convention shall not be interpreted as affecting or restricting obligations in effect under any other international, bilateral, or multilateral convention that contains or might contain clauses governing specific aspects of international criminal judicial assistance, wholly or in part, or more favorable practices which those states might observe in the matter.

Article 37

This convention shall enter into force on the thirtieth day following the date of deposit of the second instrument of ratification.

For each state that ratifies or accedes to the convention after the deposit of the second instrument of ratification, the convention shall enter into force on the thirtieth day after deposit by such state of its instrument of ratification or accession.

Article 38

If a state party has two or more territorial units in which different systems of law govern matters addressed in this convention, it shall state at the time of signature, ratification, or accession whether this convention will apply to all of its territorial units or only to one or more of them.

Such statements may be amended by way of subsequent statements, which shall expressly indicate the territorial unit or units to which the convention shall apply. Such subsequent declarations shall be transmitted to the General Secretariat of the Organization of American States, and shall become effective thirty days after the date of their receipt.

Article 39

This convention shall remain in force indefinitely, but any of the states parties may denounce it. The instrument of denunciation shall be deposited with the General Secretariat of the Organization of American States. After one year from the date of deposit of the instrument of denunciation, the convention shall cease to be in effect for the denouncing state, but shall remain in effect for the other states parties.

Article 40

The original instrument of this convention, the English, French, Portuguese, and Spanish texts of which are equally authentic, shall be deposited with the General Secretariat of the Organization of American States, which shall forward authenticated copies of the text to the United Nations General Secretariat for registration and publication, in accordance with Article 102 of the United Nations Charter. The General Secretariat of the Organization of American States shall notify the member states of that Organization and those states that have acceded to the convention of the signatures and deposits of instruments of ratification, accession, and denunciation, as well as of reservations, if any. It shall also transmit to them the statements specified in Article 38 of this convention.

ORGANIZATION OF AMERICAN STATES
WASHINGTON, D.C.

GENERAL SECRETARIAT

Certifico que el documento preinserto es copia fiel y exacta de los textos auténticos en español, inglés, portugués y francés de la Convención Interamericana sobre Asistencia Mutua en Materia Penal, suscrita en Nassau, Bahamas, el 23 de mayo de 1992, en el vigésimo segundo período ordinario de sesiones de la Asamblea General de la Organización de los Estados Americanos, y que los textos firmados de dichos originales se encuentran depositados en la Secretaría General de la Organización de los Estados Americanos.

26 de marzo de 1996

I hereby certify that the foregoing document is a true and faithful copy of the authentic texts in Spanish, English, Portuguese and French of the Inter-American Convention on Mutual Assistance in Criminal Matters, signed at Nassau, Bahamas, on May 23, 1992, at the Twenty-second Regular Session of the General Assembly of the Organization of American States, and that the signed originals of these texts are on deposit with the General Secretariat of the Organization of American States.

March 26, 1996

Certifico que o documento transcrito é cópia fiel e exata dos textos autênticos em espanhol, inglês, português e francês da Convenção Interamericana sobre Assistência mútua em Matéria Penal, assinado em Nassau, Bahamas, em 23 de maio de 1992, no Vigésimo Segundo Período Ordinário de Sessões da Assembléia Geral, e que os textos originais assinados encontram-se depositados na Secretaria-Geral da Organização dos Estados Americanos.

26 de março de 1996

Je certifie que le document qui précède est une copie fidèle et conforme aux textes authentiques français, anglais, espagnol, et portugais de la Convention interaméricaine sur l' Entraide en Matière Penale, adopté à Nassau, Bahamas, le 23 mai 1992, lors de la vingt-deuxième Session ordinaire de l'Assemblée générale, et que des originaux signés de ces textes sont déposés auprès du Secrétariat général de l'Organisation des États Américains.

26 mars 1996

Por el Secretario General
For the Secretary General
Pelo Secretário-Geral
Pour le Secrétaire général

William M. Berenson

| | |
|---|---|
| Subsecretario de Asuntos Jurídicos Interino | Acting Asistant Secretary for Legal Affairs |
| Sub-Secretário Interino de Assuntos Jurídicos | Sous-secrétaire intérimaire pour les questions juridiques |

District of Columbia
:SS

Subscribed and sworn to before me this 28th day of March, 1996

Maria-Cristina Galdames
Notary Public
My Commission expires May 14, 2000

# OPTIONAL PROTOCOL RELATED TO THE INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

## OPTIONAL PROTOCOL RELATED TO THE INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

The member states of the Organization of American States,

**BEARING IN MIND** the Inter-American Convention on Mutual Assistance in Criminal Matters adopted at Nassau on May 23, 1992 (hereinafter referred to as "the Convention"),

**HAVE AGREED** to adopt the following Optional Protocol related to the Inter-American Convention on Mutual Assistance in Criminal Matters:

### ARTICLE 1

The states parties to this Protocol shall not exercise the right provided for in Article 9.f of the Convention to refuse a request for assistance solely on the ground that the request concern a tax crime in any case in which the request is from another state party to this Protocol.

### ARTICLE 2

The states parties to this Protocol, when acting as a requested state under the Convention, shall not decline assistance which requires the measures referred to in Article 5 of the Convention, if the act specified in the request corresponds to a tax crime of the same nature under the laws of the requested state.

### FINAL CLAUSES

### ARTICLE 3

1. This Protocol shall be open for signature by member states of the Organization of American States at the OAS General Secretariat on and after January 1, 1994, and shall be subject to ratification or accession only by states parties to the Convention.

2. This Protocol shall remain open for accession by any other state that accedes to or has acceded to the Convention under the conditions set forth in this article.

3. The instruments of ratification and accession shall be deposited with the General Secretariat of the Organization of American States.

4. Each state may make reservations to this Protocol at the time of signature, ratification, or accession, provided that each reservation is not incompatible with the object and purpose of the Protocol.

5. This Protocol shall not be interpreted as affecting or restricting obligations in effect under other international, bilateral, or multilateral conventions that contain clauses governing any specific aspect of international criminal assistance, wholly or in part; or more favorable practices which those states might observe.

6. This Protocol shall enter into force on the thirtieth day following the date on which two states parties have deposited their instruments of ratification or accession, provided that the Convention has entered into force.

7. For each state that ratifies or accedes to the Protocol after the deposit of the second instrument of ratification or accession, the Protocol shall enter into force on the thirtieth day after deposit by such state of its instrument of ratification or accession, provided that such state is a party to the Convention.

8. If a state party has two or more territorial units in which different systems of law govern matters addressed in this Protocol, it shall state at the time of signature, ratification, or accession whether this Protocol shall apply to all of its territorial units or only to one or more of them.

9. Statements referred to in paragraph 8 of this Article may be amended by way of subsequent statements which shall expressly indicate the territorial units to which the Protocol shall apply. Such subsequent declarations shall be transmitted to the General Secretariat of the Organization of American States, and shall become effective thirty days after the date of receipt.

## ARTICLE 4

This Protocol shall remain in force as long as the Convention remains in force, but any of the states parties may denounce it. The instrument of denunciation shall be deposited with the General Secretariat of the Organization of American States. After one year from the date of the deposit of the instrument of denunciation, the Protocol shall cease to be in effect for the denouncing state, but shall remain in effect for the other states parties.

## ARTICLE 5

The original of this Protocol, the English, French, Portuguese, and Spanish texts of which are equally authentic, shall be deposited with the General Secretariat of the Organization of American States, which shall forward authenticated copies of the text to the United Nations Secretariat for registration.

The General Secretariat of the Organization of American States shall notify the member states of the Organization and those states that have acceded to the Convention and Protocol of the signatures and deposits of instruments of ratification, accession, and denunciation as well as reservations, if any. It shall also transmit to them the statements specified in Article 3 of this Protocol.

**DONE IN MANAGUA, NICARAGUA,** the eleventh day of June, one thousand nine hundred and ninety-three.

I hereby certify the foregoing document is a true and faithful copy of the authentic text in Spanish, English, French and Portuguese of the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted at Managua, Nicaragua, on June 11, 1993, at the twenty third regular session of the General Assembly of the Organization of American States, and that the above mentioned instrument is on deposit with the General Secretariat of the Organization of American States.

June 11, 1997

Jean Michel Arrighi
Acting Assistant Secretary for Legal Affairs
Organization of American States

TRA. No. TS.0204.15

**MINISTERIO PÚBLICO**
**[GOVERNMENT ATTRONEY GENERAL'S OFFICE]**

**FISCALÍA DE LA NACIÓN**
**[OFFICE OF THE ATTORNEY GENERAL]**

**DECIMA FISCALÍA PROVINCIAL PENAL DE LIMA DESIGNADA PARA CONOCER CASOS DE LAVADO DE ACTIVOS – CASOS NO COMPLEJOS [TENTH CRIMINAL DISTRICT ATTORNEY'S OFFICE IN AND FOR LIMA FOR NON-COMPLEX MONEY LAUNDERING CASES]**

"Year of Productive Diversification and Strengthening of Education"

**REQUEST FOR MUTUAL LEGAL ASSISTANCE**

I, Daniel Roberto COLLAS HUARACHI, District Attorney of the Tenth Criminal District Attorney's Office in and for Lima, Government Attorney General's Office, Republic of Peru, present my compliments to the competent authorities of the United States of America and, by virtue of Articles 1, 2, 4, 7 and 26 of the Inter American Convention on Mutual Assistance on Criminal Matters, request assistance via International Judicial Cooperation in the proceeding brought against Gustavo Antonio RIVERA GUZMAN, Jose Ricardo MAZA LEON, M&R Holding Inversiones SAC, and Servicios y Construcciones Reategui Sociedad Comercial de Responsabilidad Limitada - SERCORE S.R.L.TDA, for their role in the alleged laundering of money, to the detriment of the Peruvian State.

**1. CRIME SUBJECT MATTER OF THE PRELIMINARY INVESTIGATION**

The crime referred to in this request is Money

Laundering, described and punished in the Criminal Act against Money Laundering No. 27765, as amended by Legislative Decree No. 986 as follows:

**Article 1.- Acts of Conversion and Transfer of Funds**

"Whoever converts or transfers money, property, instruments, or profits, knowing or suspecting their unlawful origin, and obstructs the identification of their origin, their seizure or forfeiture, shall be punished by imprisonment for not less than eight (8) and not more than fifteen (15) years, and a fine of one hundred and twenty (120) to three hundred and fifty three (353) days".

**Article 2.- Acts of Concealment and Possession of Funds**

"Whoever obtains, uses, keeps, guards, receives, conceals, or keeps in his possession, money, properties, instruments or proceeds, knowing or suspecting their unlawful origin, in order to prevent the identification of their origin, their seizure or forfeiture, shall be punished by imprisonment for not less than eight (8) and not more than fifteen (15) years, and a fine of one hundred and twenty (120) to three hundred and fifty (350) days".

## 2. SUMMARY DESCRIPTION OF THE FACTS

This investigation has been launched by virtue of Police Report No. 122-10-DIRINCRI-PNP/DIVILA-D3, which states that Gustavo Antonio RIVERA GUZMAN and Jose Ricardo MAZA LEON are involved in alleged

activities involving laundering of money, as they are purchasing personal and real properties, for which they created companies such as M&R Holding Inversiones SAC, and Servicios y Construcciones Reategui Sociedad Comercial de Responsabilidad Limitada - SERCORE S.R.LTDA. Gustavo RIVERA introduced himself in domestic companies as a representative of several foreign investors and offered financial credits through US company HENCORP BECSTONE CAPITAL LC. Gustavo RIVERA pretended to collect information from his alleged occasional clients to subsequently falsify public and private documents and file them as true documents with foreign company HENCORP BECSTONE CAPITAL LC, which decided to grant USD2'070,000.00 believing that said documents were true. The petitioners never received this money because Jose Ricardo MAZA LEON and Gustavo Antonio RIVERA GUZMAN blocked the credit and diverted it to the companies linked to them, to subsequently convert the money by purchasing personal and real properties and creating companies in which they involved other people aimed at concealing their real involvement. In order to obtain this financing, the defendants also used company EX-IM BANK, which at the end had to take responsibility for the financial credit.

## 3. DESCRIPTION OF THE ASSISTANCE

3.1 **COLLECT** from company **HENCORP BECSTONE CAPITAL LC,** 777 Brickell Ave #1010, Miami, Fl 33131 United States of America, telephone 305 373

9000, **certified copies of:**

a) Intermediation Contract signed between HENCORP BECSTONE CAPITAL LC and Jose Ricardo MEZA LEON, who was its representative in Peru;

b) Intermediation Contract Addendum signed between HENCORP BECSTONE CAPITAL LC and Jose Ricardo MEZA LEON;

c) Documents authoring the loan granted by HENCORP BECSTONE CAPITAL LC to Servicios y Construcciones Reategui S.R.L.;

d) Documents authoring the disbursement of money by HENCORP BECSTONE CAPITAL LC to M&R Holding Inversiones S.A.C., as well as the documents by which the beneficiary instructed the funds to be deposited in a bank account of an entity different from the petitioner of the loan;

e) Certificate of disbursement of money issued by HENCORP BECSTONE CAPITAL LC to M&R Holding Inversiones S.A.C.;

f) Letter from Jose Ricardo MAZA LEON, Regional Director of HENCORP BECSTONE CAPITAL LC to Ricardo Gustavo RIVERA GUZMAN, General Manager of Servicios y Construcciones Reategui S.R.L., dated April 2, 2007;

g) Promissory Note, and exhibits, presented by

Gustavo Antonio RIVERA GUZMAN, General Manager of Servicios y Construcciones Reategui S.R.L., to HENCORP BECSTONE CAPITAL LC when applying for the loan.

3.2 **REQUEST** company **HENCORP BECSTONE CAPITAL LC**, 777 Brickell Ave #1010, Miami, Fl 33131 United States of America, telephone 1 305 373 9000, **to inform:**

a) About the financing granted to SERCORE SRL, date of application, dated of granting, method of payment (payment schedule), payments made and current credit statement;

b) If Servicios y Construcciones Reategui SRL applied as SERCORE SRL or if both names are registered for the same business;

c) If the beneficiary of the credit (Servicios y Construcciones Reategui SRL) was registered with the Registros Públicos del Perú [Peruvian Public Records Office];

d) If they currently have a representative in Peru, his name and address, and documents evidence the granting of powers.

3.3 **REQUEST** company **EX-IM BANK**, 5835 Blue Lagoon Drive, Suite 203, Miami, Fl 33126 United States of America, telephone (305) 526-7436, **to inform:**

a) The current status of the debt contracted by

Servicios y Construcciones Reategui SRL, based on failure of payment of money lent to HENCORP BECSTONE CAPITAL LC;

b) If they currently have a representative in Peru, his name and address, and documents evidence the granting of powers.

3.4 **REQUEST** company **EX-IM BANK,** 5835 Blue Lagoon Drive, Suite 203, Miami, Fl 33126 United States of America, telephone (305) 526-7436, **certified copies of:**

a) Contract signed by this company and Servicios y Construcciones Reategui SRL or SERCORE SRL.

**4. ACT WHICH GIVES RISE TO THIS ASSISTANCE REQUEST**

The above described facts and crime under investigation caused this district attorney's office to request mutual assistance in order to find out the origin of the money entered into the domestic financial system, which will allow us to determine whether this money has an unlawful origin, so that we can establish the commission of the crime of money laundering. Therefore, this Government Attorney General's Office, which is in charge of prosecuting and punishing crimes and offering legal protection, requires the US authorities to cooperate with said mission, for which, in addition to the acts of investigation promptly ordered, it is pertinent and relevant to have documents which allow to confirm the

thesis of the prosecution. These documents have not been filed by the defendants as they say said information should be requested US financial entities.

5. **DEADLINE FOR EXECUTION**

The US competent authorities are respectfully requested to execute this mutual legal assistance request in no more than 30 days in view that this proceeding is subject to lapsing terms pursuant to Criminal Code, Section 80 et seq.

The Government Attorney General's Office of the Republic of Peru offers reciprocity international bilateral and/or multilateral conventions and treaties signed by both countries.

I avail myself of this opportunity to renew my highest consideration.

Lima, August 25, 2015

[signed] Daniel R. COLLAS HUARACHI
Criminal District Attorney in and for Lima